UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# ORIGINAL

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :
:
      - v. - :
:
CRISTIAN VINTILA, :
MASSIMO ROMAGNOLI, and :
VIRGIL FLAVIU GEORGESCU, :
:
          Defendants. :
:
- - - - - - - - - - - - - - - - x

**SEALED**
**INDICTMENT**

14 Cr.

**14 CRIM 799**

## BACKGROUND

### THE FARC

      1.    From in or about 1964 until on or about the date of the filing of this Indictment, the Fuerzas Armadas Revolucionarias de Colombia (the "FARC") has been and is an international terrorist group dedicated to the violent overthrow of the democratically elected Government of Colombia.  Since its inception, while continuing to engage in bombings, massacres, kidnappings, and other acts of violence within Colombia, the FARC also evolved into the world's largest supplier of cocaine.  The FARC was designated as a foreign terrorist organization ("FTO") in October 1997 by the United States Secretary of State and remains so designated as of the date of the filing of this Indictment.  The European Union also has designated the FARC as a terrorist organization.

JUDGE ABRAMS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/4/14

2.    During at least the ten years prior to the date of filing of this Indictment, the FARC has directed violent acts against United States persons and property interests in foreign jurisdictions, including, but not limited to, Colombia.  In order to protect its financial interests in the cocaine trade, the FARC leadership ordered its members to take counter measures against the Government of Colombia's cocaine fumigation campaign, including, among other actions: attempting to shoot down fumigation aircraft; forcing members and supporters to publicly rally against fumigation; and attacking Colombian infrastructure.  Having recognized that the United States contributed significantly to Colombian fumigation efforts, the FARC leadership ordered FARC members to kidnap and murder United States citizens and to attack United States interests in order to dissuade the United States from continuing its efforts to fumigate and disrupt the FARC's cocaine and cocaine paste manufacturing and distribution activities.

3.    The FARC's violent acts directed against the United States and United States interests have included: (1) the murder of United States nationals; (2) the kidnapping of United States nationals; and (3) the bombing of a restaurant in Bogota, Colombia, frequented by United States nationals.

THE DEFENDANTS

4.    At all times relevant to this Indictment, CRISTIAN

VINTILA, the defendant, was a weapons trafficker based in Romania; MASSIMO ROMAGNOLI, the defendant, was a weapons trafficker based in Greece, who had the ability to procure fraudulent end-user certificates ("EUCs") for military-grade weaponry; and VIRGIL FLAVIU GEORGESCU, the defendant, was a weapons broker based in Romania.

       5.    VIRGIL FLAVIU GEORGESCU, the defendant, introduced CRISTIAN VINTILA and MASSIMO ROMAGNOLI, the defendants, to individuals who identified themselves as representatives and/or associates of the FARC, but who were, in fact, confidential sources ("CS-1," "CS-2," "CS-3," and, collectively, the "CSs") working for the United States Drug Enforcement Administration ("DEA") and acting at the direction of DEA agents.  During a series of telephone calls and meetings with the CSs, VINTILA, ROMAGNOLI, and GEORGESCU agreed to provide weapons, including machine guns and anti-aircraft cannons, to the CSs with the understanding that the weapons would be used against American forces assisting the Government of Colombia. ROMAGNOLI additionally agreed to provide fraudulent EUCs, documentation designed to make the illegal sale of weapons look legitimate.

COUNT ONE

CONSPIRACY TO KILL OFFICERS AND EMPLOYEES OF THE UNITED STATES

The Grand Jury charges:

6.     From at least in or about May 2014, up to and including in or about October 2014, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, at least one of whom will be first brought to and arrested in the Southern District of New York, and others known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to kill officers and employees of the United States, while such officers and employees were engaged in and on account of the performance of official duties, and any person assisting such officers and employees in the performance of such duties and on account of that assistance, in violation of Title 18, United States Code, Section 1114.

7.     It was a part and an object of the conspiracy that CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, and others known and unknown, agreed to provide the FARC with weapons to be used, among other things, to kill officers and employees of the United States, and persons assisting such officers and employees in the performance of official duties, in Colombia.

4

<u>Overt Acts</u>

8.    In furtherance of the conspiracy and to effect the illegal object thereof, CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, committed the following overt acts, among others:

a.    Between May and August 2014, GEORGESCU participated in multiple recorded telephone conversations with CS-1. During these conversations, after being told that CS-1 was a FARC representative, GEORGESCU told CS-1, among other things, that (1) CS-1 should not talk openly on the telephone about his affiliation with the FARC; (2) GEORGESCU had received a list of weapons requested by CS-1 (the "Weapons List"); and (3) GEORGESCU's weapons contacts would be able to procure those weapons for CS-1.

b.    On or about September 23, 2014, in Bucharest, Romania, GEORGESCU met with CS-1.  During this meeting, which was audio- and video-recorded, CS-1 explained that his (CS-1's) associates wanted to purchase weapons in order to kill Americans and, in particular, shoot down American helicopters and airplanes.

c.    On or about September 24, 2014, in Bucharest, Romania, GEORGESCU and VINTILA met with CS-1 and CS-2.  During the meeting, which was audio-recorded, the following additional overt acts occurred:

5

        i.    After being told that CS-1 and CS-2 represented the FARC, needed weapons to combat Americans in Colombia, and sought to kill Americans, VINTILA told CS-1 and CS-2 that he (VINTILA) had sent the Weapons List to contacts in order to confirm a supplier for the items on the list.

        ii. VINTILA gave CS-1 and CS-2 a catalogue of weapons (the "Vintila Catalogue").  VINTILA indicated that he (VINTILA) could provide any of the items in the Vintila Catalogue to CS-1 and CS-2, including pistols, machine guns, and other high-powered weaponry.

        iii. After being told that CS-1 and CS-2 represented the FARC, needed weapons to combat Americans in Colombia, and sought to kill Americans, GEORGESCU agreed to contact CS-1 once GEORGESCU and VINTILA had located EUCs for the weapons.

        d.   On or about October 8, 2014, in Tivat, Montenegro, VINTILA, ROMAGNOLI, and GEORGESCU met with CS-1, CS-2, and CS-3.  During this meeting, which was audio- and video-recorded, the following additional overt acts occurred:

        i.   ROMAGNOLI explained that he would be providing EUCs for the weapons, and showed CS-3 an image of a sample EUC on GEORGESCU's laptop computer.

        ii.  After hearing that the CSs wanted weapons to shoot down American helicopters, GEORGESCU stated that the weapons

would be delivered in a particular country in Africa, and that the CSs would be responsible for transporting the weapons on to Colombia.

      iii. After hearing that the CSs wanted weapons to shoot down American helicopters, ROMAGNOLI showed the CSs a catalogue of weapons (the "Romagnoli Catalogue"), which included pictures and quantities of different weapons systems, including automatic weapons and shoulder-fired rocket launchers. ROMAGNOLI told the CSs that he had produced the Romagnoli Catalogue for a different customer, and that it was just one example of what he (ROMAGNOLI) could provide.

      iv.   After hearing that the CSs needed to receive approval from their FARC superiors in order to complete the purchase, VINTILA stated that the CSs should make a down payment and test fire weapons before completing the transaction.

      v.   After hearing that the CSs worked for the FARC and wanted weapons to shoot down American helicopters, ROMAGNOLI discussed the logistics of receiving payment for the weapons from the CSs.

   (Title 18, United States Code, Sections 1117 and 3238.)

COUNT TWO

## CONSPIRACY TO PROVIDE MATERIAL SUPPORT OR RESOURCES TO A FOREIGN TERRORIST ORGANIZATION

The Grand Jury further charges:

9.    The allegations set forth in Paragraphs One through Five and Eight above are incorporated by reference as if set forth fully herein.

10.    From at least in or about May 2014, up to and including in or about October 2014, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, at least one of whom will be first brought to and arrested in the Southern District of New York, and others known and unknown, knowingly did combine, conspire, confederate and agree together and with each other to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b)(1), to a foreign terrorist organization, to wit, the FARC, which was designated by the United States Secretary of State as a foreign terrorist organization in October 1997, pursuant to Section 219 of the Immigration and Nationality Act, was redesignated as such on October 2, 2003, and October 11, 2005, and is currently designated as such, as of the date of this Indictment's filing.

8

11.   It was a part and an object of the conspiracy that CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, and others known and unknown, would and did provide the FARC with "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b)(1), to include tangible and intangible property, services, financial services, expert advice and assistance, false documentation, and weapons, among other things, knowing that the FARC had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that the FARC had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B(a)(1).

<u>Overt Acts</u>

12.   In furtherance of the conspiracy and to effect the illegal object thereof, CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, and others known and unknown, committed the overt acts set forth in Paragraph Eight of this Indictment, which are fully incorporated by reference herein.

(Title 18, United States Code,
Sections 2339B(a)(1), (d)(1)(C), (d)(1)(D), (d)(1)(E), and 3238).

## FORFEITURE ALLEGATIONS

13.   The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(G), and Title 28, United States Code, Section 2461(c).

14.   The violations of Title 18, United States Code, Sections 1117 and 2339B alleged in Counts One and Two of this Indictment are Federal crimes of terrorism, as defined in 18 U.S.C. § 2332b(g)(5), against the United States, citizens and residents of the United States, and their property.

15.   CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, were individuals engaged in planning and perpetrating a Federal crime of terrorism against the United States, citizens and residents of the United States, and their property.

16.   Upon conviction of any of the offenses in violation of Title 18, United States Code, Sections 1117 and 2339B alleged in Counts One and Two of this Indictment, CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(G)(i), and Title 28, United States Code,

10

Section 2461(c), all right, title, and interest in all assets, foreign and domestic.

17.   Upon conviction of any of the offenses in violation of Title 18, United States Code, Sections 1117 and 2339B alleged in Counts One and Two of this Indictment, CRISTIAN VINTILA, MASSIMO ROMAGNOLI, and VIRGIL FLAVIU GEORGESCU, the defendants, shall pay to the United States, pursuant to pursuant to Fed. R. Crim. P. 32.2(b)(1), a money judgment equal to the value of the assets subject to forfeiture under Paragraphs 13 through 16 above.

(Title 18, United States Code, Section 981(a)(1)(G) and
    Title 28, United States Code, Section 2461(c).)

<u>Substitute Asset Provision</u>

18.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.    has been commingled with other

property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p),

to seek forfeiture of any other property of the defendants up to the

value of the above forfeitable property.

(Title 18, United States Code, Sections 982, 1956, and 2; Title 21,
            United States Code, Section 853(p).)

FOREPERSON

PREET BHARARA
United States Attorney

12

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

CRISTIAN VINTILA,
MASSIMO ROMAGNOLI, and
VIRGIL FLAVIU GEORGESCU,

Defendants.

### SEALED INDICTMENT

14 Cr.

(18 U.S.C. §§ 1117, 2339B, and 3238)

PREET BHARARA
United States Attorney.

A TRUE BILL

_Yolanda Ocasio_
Foreperson

12/4/14 - Filed Sealed Indictment
aa    &/w issued    Judge Mass