UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

                                 Ind. # 14 cr. 799 (RA)

     v.

VIRGIL FLAVIU GEORGESCU.
            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - -

## MEMORANDUM OF LAW

This memorandum is submitted in support of defendant Georgescu's motion to dismiss Count One of the indictment on the grounds that 1) the count does not state an offense in that a) the acts charged in that count are not chargeable under 18 U.S.C. Sec. 1114 and b) the charge of reckless murder con not, by its own terms exist; 2) that the count does not provide for extraterritorial jurisdiction; and 3) for discovery.

## BACKGROUND

Georgescu and his co-defendants were the targets of a DEA "sting" operation where informants, posing as members of a terrorist organization, FARC, sought to buy weapons for the purpose of killing American officers and employees, *i.e.* soldiers in Colombia. All the acts in furtherance of the alleged conspiracies which resulted were performed overseas.

## THE ACTS CHARGED IN COUNT ONE ARE NOT CHARGEABLE UNDER 18 U.S.C. SEC. 1114

Count One of the indictment charges the defendants, including Virgil Flaviu Georgescu, with conspiracy to murder officers and employees of the United States in violation of Title 18 United States Code Sections 1114 and 1117 which read:

18 U.S.C. Section 1114

> Protection or Officers and Employees of the United States:
>
> Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished…

18 U.S.C. Section 1117

> Conspiracy to Murder:
>
> If two or more persons conspire to violate section … 1114 … of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.

The alleged act or acts underlying the charged crime was that the defendants

2

"agreed with each other to provide the FARC [a terrorist organization] with weapons to be used, among other things, to kill officers and employees of the United States, while such officers and employees were engaged in and on account of the performance of official duties ...." (Indictment, par. 7.)

The indictment alleges nothing that indicates that the defendants harbored a subjective intent to kill. However, the government's theory of prosecution is that the act of providing weapons to a terrorist organization, which has declared its intention to use the weapons to kill officers of the United States, is a reckless act satisfying the murder element of "malice aforethought." But, the described acts fall squarely, indeed virtually word-for-word, within the specific terms of the later-enacted Title 18 U.S.C., Section 2339A:

<u>Providing Material Support to Terrorists</u>:

> Whoever provides material support or resources ... knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section ... 1114 ... of this title, or attempts or conspires to do such an act, shall be fined under this title, imprisoned not more than 15 years, or both ....

As the alleged criminal acts are encompassed within the terms of Section 2339A, a specific statute, it was improper to indict under Section 1114.

<u>The Specificity Principle</u>

The long-standing "specificity principle" "gives precedence to the terms of the more specific statute where a general statute and a specific statute speak to the

3

same concern, even if the general provision was enacted later." Simpson v. United States, 435 U.S. 6 (1977); MacEvoy v. United States, 322 U.S. 102 (1944) ( However inclusive may be the general language of a statute, it "will not be held to apply to a matter specifically dealt with in another part of the same enactment. . . . Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); America Land Title Ass'n v. Clarke, 968 F.2d 15, 157 (2d Cir. 1992) ("We are guided by the principle that where two statutes conflict, the statute that addresses the matter under consideration in specific terms controls over one that does so in a general manner, unless of course Congress has manifested a clear intent to the contrary."), cert. denied, 508 U.S. 971 (1993); Greene v. United States, 79 F.3d 1348, 1355 (2d Cir. 1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.").

The principle was tempered somewhat in United States v. Batchelder, 4U.S. 114 (1979), where the Supreme Court held that where an act violates more

than one criminal statute, the government may *usually* prosecute under either statute. However, where Congress' intent in enacting the specific statute was to preempt the general, the government's discretion to prosecute is limited to the specific. United States v. LaPorta, 46 F.3d 152 (2d Cir. 1994); United States v. Tomeny, 144 F.3d 749 (11th Cir. 1998).

That 2339A was intended to preempt, i.e., be the exclusive means to prosecute the conduct in issue here - providing weapons to terrorists knowing or intending that they are to be used in preparation for, or in carrying out the killing of officers of the United States - without a subjective intention to kill - is manifest. Section 2339A must logically preempt 1114 for otherwise Section 2339A would be rendered superfluous since *any* provision of weapons to terrorists with knowledge or intent that they would be used to carry out a violation of Section 1114 would be punishable under 1114. "Such a construction would rob [Section 2339A] of all practical effect, surely not the Congressional intended." United States v. LaPorta, supra.

In United States v. Laporta, supra, the defendant was charged, *inter alia* with

5

destruction of government property - the burning of a government vehicle, in violation of 18 U.S.C. Sec. 1361 - and the use of fire to destroy government property, in violation of 18 U.S.C. Sec. 844(h)(1). The Second Circuit upheld dismissal of the 844(h)(1) count for the reason that that Sec. 844(h)(1) was "displaced," i.e., "preempted," by Sec. 844(f).

Sec. 844(f) is specifically limited to the destruction of government property by fire. Sec. 844(h)(1) is also limited to fire or explosives, but sweeps more broadly; proscribing generally the use of these means to commit "any" federal felony, not just property destruction. Thus, the Court stated, "under long-standing principles of statutory construction, a general section of a statute must give way to a specific one.", citing Busic v. United States, 446 U.S. 398, 406 (1980) ("a more specific statute will be given precedence over a more general one, regardless of their temporal sequence"). The Court went on:

> The government contends that it simply exercised its right to elect between overlapping statutes, as it might choose to ignore a burglary and prosecute the accompanying larceny. True, where an act violates more than one criminal statute, the government may usually prosecute under either statute. See United States v. Batchelder, 442 U.S. 114, 123-24, 60 L. Ed. 2d 755, 99 S. Ct. 2198 (1979). Here, though, the specific statute -- § 844(f) -- must logically preempt the general one, for otherwise § 844(f) would be rendered superfluous: § 844(h)(1), when coupled with § 1361 (which proscribes the willful injury of government property), would prohibit willful

6

destruction of government property by fire, covering every circumstance that § 844(f) -- malicious destruction of government property by fire -- covers. Such a construction would rob § 844(f) of all practical effect, surely not the Congressional intent.

Accordingly, on the facts as contained in Count One, Sec. 1114 is preempted by Sec. 2339A and that count does not state an actionable offense.

<u>Conspiracy to Commit Reckless Murder: A Crime<br>Legally and Logically Impossible to Commit.</u>

As noted above the government's theory of prosecution on Count One is that the act of providing weapons to a terrorist organization, which has declared its intention to use the weapons to kill officers of the United States, is a reckless act satisfying the murder element of "malice aforethought." In other words the defendants conspired to commit reckless murder - a non-existent crime  See, Lafave, infra,

> [T]here is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.

As LaFave explains:

> The fact that conspiracy requires an intent to achieve a certain objective means that individuals who have together committed a certain crime have not necessarily participated in a conspiracy to commit that crime.... It follows, therefore, that there is no such

7

> thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.... Thus even if what was done under an agreement has been made unlawful on a liability without fault basis, there can be no conviction for conspiracy unless it is shown that the parties actually intended to achieve what was done. This is as it should be, for the fact that a statute has made the doing of a certain act an offense without regard to mental fault can hardly be said to have worked a change in the mental element of the distinct crime of conspiracy.

Wayne R. LaFave, Criminal Law, Section 580–581, 583, 3d ed. (2000). And, the American Law Institute, in its Commentary to the Model Penal Code, explicitly recognizes the same:

> When recklessness or negligence suffices for the actor's culpability with respect to a result element of a substantive crime, as for example when homicide through negligence is made criminal, there could not be a conspiracy to commit that crime.

The example for this principle given in the Model Penal Code is quite apt here, that is, where conspirators:

> plan to destroy a building by detonating a bomb, though they know and believe that there are individuals in this building and persons are killed, they are guilty of murder, but this is because murder may be committed other than with an intent-to-kill mental state. Their plan constitutes a conspiracy to destroy the building, but not a conspiracy to kill the inhabitants, for they did not intend the latter result.

Model Penal Code Sec. 5.03, Comment at 407-08 (1985).

Aside from the commentators, numerous state courts have held, in the

criminal context, that it is not possible to conspire to achieve an unintended consequence. Specifically regarding conspiracy to commit homicide, see for example, State v. Baca, 950 P.2d 776 (N.M. 1997) (reversing conviction for conspiracy to commit "depraved 28 mind" murder, which does not require intent to kill, but only recklessness); People v. Swain, 909 P.2d 994 (Cal. 1996)(not possible to conspire to commit "implied malice murder," which does not require intent to kill); Palmer v. People, 964 P.2d 524 (Colo. 1998)(conspiracy to commit reckless manslaughter not a crime); Conley v. State, 247 S.E. 2d 562 (Ga. 1978) ("one cannot conspire to kill another in the heat of passion").

And, see for example, just some of the numerous decisions in the federal civil context where district courts have dismissed, as a legal impossibility, the idea that one can conspire to act unintentionally. See, e.g.; Senart v. Mobay Chem. Corp., 597 F. Supp. 502, 505 (D. Minn. 1984) (It is "impossible to conspire to commit negligence." ); Wright v. Brooke Group Ltd.,114 F.Supp.2d 837 (N.D. Iowa 2000) ("because conspiracy requires an agreement to commit a wrong, there can hardly be a conspiracy to be negligent - that is, to intend to act negligently."); Sackman v. Liggett Group, 995 F.Supp. 1437 (E.D.N.Y. 1997)("What the plaintiffs

9

suggest is a conspiracy to commit negligence, a paradox at best."); Sonnenreich v. Philip Morris Inc., 929 F.Supp. 416, 419 (S.D. Fla. 1996) ("Logic and case law dictate that conspiracy to commit negligence is a non sequitur).

In United States v. Muyet, 994 F.Supp. 501 (S.D.N.Y. 1998) conspiracy to commit reckless murder in the criminal context was addressed. There, the district court determined that, "The charges of conspiracy to murder and attempted murder require proof of an intent to kill." And, the court specifically instructed the jury that it had to find proof of an intent to kill before it could properly return a guilty verdict on those charges.

This ruling was an extrapolation from the Second Circuit's opinion in United States v. Kwong, 14 F.3d 189 (2d Cir. 1994). While the decision in Kwong did not specifically address the supposed crime of conspiracy to commit reckless murder, it did involve the analogous inchoate crime of attempted murder. There, the Circuit rejected a "malice aforethought" instruction which would have allowed conviction of attempted murder based on a mental state of recklessness rather one of subjective intent to kill. The Court ruled that while a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill, mere recklessness would not suffice. In other words, it was

10

held that there is no such crime as a "reckless" attempt to commit murder.

Two other Circuits have applied the above reasoning to analogous specific intent crimes. In United States v. Jones, 681 F.2d 610 (9th Cir. 1982), the charge was assault with intent to commit murder. The trial court instructed the jury that murder was the unlawful killing of a human being with malice aforethought and defined malice aforethought as either an intent to take the life of another or an intent to act willfully in callous and wanton disregard of the consequences to human life. Noting that this definition would have been correct as part of an intent instruction if the charge had been murder, the Ninth Circuit ruled that assault with intent to commit murder requires a specific intent to kill the victim. And, thus, the court found, the intent to act recklessly in wanton disregard of the consequences to human life is less than the specific intent to kill necessary for a conviction of assault with intent to commit murder.

In United States v. Perez, 43 F.3d 1131 (7th Cir. 12/22/1994), defendant was also charged with assault with intent to commit murder and the "malice aforethought" instruction given stated that the government must prove that Mr. Perez "acted consciously, with the intent to kill" However, it also specifically stated that the government need not prove Mr. Perez' "subjective intent to kill "-- a

11

showing of "reckless and wanton conduct" was sufficient. Citing Kwong and Jones, the Seventh Circuit held that by permitting the jury to convict without determining that the defendant had the subjective intent to kill the victim, the instruction constituted a misstatement of the law.

In sum, Count One charging conspiracy to commit reckless murder does not state an offense and should be dismissed. *

## COUNT ONE MUST BE DISMISSED BECAUSE THE STATUTE DOES NOT ALLOW FOR EXTRATERRITORIAL JURISDICTION

In Count One, "Conspiracy to kill officers and employees of the United States" alleges a violation of 18 U.S.C. Section 1114:

> [w]hoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished...

---

\*   But see, United States v. Bout, 731 F. 3d 233 – Court of Appeals, 2nd Circuit 2013.

Sec. 1114 does not make any provision for extraterritorial jurisdiction. Since Count One alleges conduct which incurred solely outside the United States it must be dismissed for lack of jurisdiction.

While it is indisputable that Congress has the power to enforce its laws beyond the territorial boundaries of the United States see, e.g., E.E.O.C. v. Arabian American Oil Co., 499 U.S.244 (1991); United States v. Yousef, 357 F.3d 56 (2d Cir. 2003), cert.denied. 540 U.S. 933 (2003), if it intends to provide that power, it must clearly do so, see, Argentine Republic v. Amerada Hess Shipping Corp, 488 U.S. 428 (1989). Generally, however, Congress passes legislation with domestic concerns in mind, Smith v. United States, 207, 201 n.5 (2003). The corollary of this principle is that "... legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." Foley Brothers v. Filardo, 336 U.S. 281 (1949); see, Small v. United States, 544 U.S. 385 (2005); United States v. Flores, , Sec. 1114289 U.S. 187 (1933). To put it another way, " Congress' awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which it has expressly legislated the extraterritorial application of the statute." E.E.O.C. v. Arabian American Oil Co., 499 U.S.244 at 258.

13

If the statute's plain language is clear, however, no further analysis is necessary. United States v. Ron Pair Enterprises, Inc., 489 U.S.235 (1989). In this instance Sec. 1114 is clear, there is no provision for extraterritorial jurisdiction. As such Count One should be dismissed for lack of jurisdiction over activity that allegedly took place overseas.

Further support for the proposition that Congress did not intend to provide for extraterritorial jurisdiction is provided by examination of several other statutes as set forth in Chapter 51 of United States Code Title 18 - Homicide - which includes 18 U.S.C. 1114. See, United States v. Jackson, 759 U.S. 343 (4th Cir.), cert. denied, 474 U.S. 924 (1985) (to ascertain the purpose of a statute the Court can look, *inter alia*, to related statutes.) Cf. Sale v. Haitian Centers Council, Inc., 509 U.S. 169 (1993) (analysis of other parts of Act undertaken to determine Congressional intent). As noted, Sec. 1114 contains no provision for extraterritorial jurisdiction. Section 1114, however, references three other statutes in Chapter 51 for punishment; Sec. 1111, "Murder;" Sec. 1112; "Manslaughter;" and "Attempts to Commit Murder or Manslaughter." Each of these statutes contains a clearly delineated jurisdictional provision: "[w]ithin the special maritime and territorial jurisdiction of the United States." These statutes,

14

or their precursors, were all passed at the same time, on June 25, 1948, as part of the Second Session of the 80th Congress, c. 645, 62 Stat. 683. Congressional intent is clearly illuminated - if Congress had intended to provide for extraterritorial jurisdiction in Sec. 1114 it would have done so, having done it in other sections of the Chapter passed at the same time. See, Russello v. United States, 464 U.S. 16 (1983)(citation omitted)("[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") Furthermore, where a statute is silent as to its territorial reach, there is generally a presumption against its extraterritorial application. E.E.O.C. v. Arabian American Oil Co., 499 U.S. 244 at 258.

An exception to this presumption against applying extraterritorial jurisdiction to certain crimes was set forth in United States v. Bowman, 260 U.S. 94 (1922):

> [t]he necessary locus, when not specially defined, depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish

15

> crime under the law of nations. Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement, and frauds of all kinds which affect the peace and good order of the community must, of course, be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard.

The Court, however, followed up the exception, noting:

> [b]ut the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents.

id.

Applying the Bowman test to the instant matter supports a finding that extraterritorial jurisdiction does not apply to Sec. 1114. Homicide offenses like those contained within Chapter 51 are precisely the type of "crimes against private individuals" which "... must, of course, be committed within the territorial jurisdiction of the government ...." Bowman, 260 U.S. at 98. The Bowman Court lists the crime of "murder" as one of the examples of the class of crimes which is

16

not given extraterritorial effect. Id.

Bowman also refers, however to a "class" of statutes "enacted because of the right of the government to defend itself," id., for which this presumption does not apply. The original "class" of criminal statutes in "Chapter 51 - Homicide," are all" crimes against private individuals" which, under Bowman, are not subject to to extraterritorial jurisdiction. The fact that Sec. 1114 is labeled "Protection of Officers and Employees of the United States," cannot overcome the presumption. While this statute may appear related to the "right of the government to defend itself," under the Bowman test, it is not part of a "class" of similar criminal provisions having to do with murder overseas.

The only other statues in this Chapter, more recently enacted, having to do with murders overseas are Secs. 1116 and 1119. Those statutes, however, specifically set forth the requirements for extraterritorial jurisdiction. See, Secs. 1116(c), 1119(b-c). Again, this underscores a finding that if Congress had intended to provide extraterritorial jurisdiction in the statute , it would have plainly stated it in Sec. 1114. See, Russello, 464 U.S. at 23; , but see, United States v. Al Kassar, 660 F.3d 108 (2d Cir. 2011).

## CONCLUSION

For the reasons discussed above the relief sought herein should be granted all respects.

Respectfully submitted,

Albert Y. Dayan