USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/7/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

VIRGIL FLAVIU GEORGESCU,

Defendant.

---

No. 14-CR-799 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Defendant Virgil Flaviu Georgescu is charged with conspiring to murder American officers and employees in violation of 18 U.S.C. §§ 1114 and 1117 and with providing material support to the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), an international terrorist organization, in violation of 18 U.S.C. § 2339B. As charged in the Indictment, Georgescu introduced his co-Defendants, Christian Vintila and Massimo Romagnoli, to individuals who identified themselves as FARC representatives or associates, but were in fact confidential sources working for the Drug Enforcement Administration ("DEA"). During a series of phone calls and meetings with those sources, the Defendants allegedly agreed to provide weapons—including machine guns and anti-aircraft cannons—to the sources with the understanding that such weapons would be used against American forces assisting the Colombian Government.

Before the Court is Georgescu's motion to (1) dismiss the conspiracy to murder charge in Count One of the Indictment, and (2) for discovery of his communications with the Central Intelligence Agency ("CIA"), as well as records of his prior cooperation with the Federal Bureau of Investigation ("FBI"). For the reasons that follow, the motion is denied.

## DISCUSSION

### I. Count One of the Indictment

Defendant asserts three arguments for dismissal of Count One of the Indictment: (1) the conduct alleged fails to constitute a violation of 18 U.S.C. § 1114 because the Indictment falls short of alleging a "subjective intent to kill," (2) the statute is preempted by 18 U.S.C. § 2339A, and (3) the statute cannot be applied extraterritorially. Each argument fails.

#### A. Sufficiency of the Indictment

First, Defendant argues that Count One of the Indictment must be dismissed because it fails to allege a "subjective intent to kill" as required by 18 U.S.C. § 1114, and rather alleges merely a conspiracy to commit "a reckless act." Def.'s Mem. at 7. To the contrary, the allegations in the Indictment make it sufficiently clear that Defendant is charged with conspiring to purposefully kill government officials.

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 710 (2013), *reh'g denied*, 134 S. Ct. 1371 (2014) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). The Indictment here charges Defendant with conspiring to violate § 1114, which proscribes

> kill[ing] or attempt[ing] to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance.

2

18 U.S.C. § 1114.

The Indictment sufficiently alleges the intent element of this crime. It charges that Defendants "willfully and knowingly" conspired "to kill officers and employees of the United States while such officers and employees were engaged in and on account of the performance of official duties." Indictment at 4.[1] Specifically, the Indictment alleges that "[a]fter being told that [the undercover agents] represented the FARC, needed weapons to combat Americans in Colombia, and sought to kill Americans, Georgescu agreed to contact [one of the purported FARC members] once Georgescu and Vintilla had located EUCs [or end user certificates] for the weapons." *Id.* at 6.

Defendant's argument is premised on the contention that the alleged conspiracy is based on "the act of providing weapons to a terrorist organization, which has declared its intention to use the weapons to kill officers of the United States." Def.'s Mem. at 3. This act of providing weapons, Defendant argues, does not rise to the level of subjective purposeful intent to kill, but at most alleges a conspiracy to recklessly cause the death of American officials. Def.'s Reply at 2. The Court disagrees. As alleged, the object of this conspiracy was not merely to provide weapons. The Indictment plainly alleges that Georgescu knew and indeed, was recorded in a conversation in which the purported FARC member "explained that his . . . associates wanted to purchase weapons in order to kill Americans and, in particular, shoot down American helicopters and airplanes." Indictment at 5. This is sufficient to allege Defendant's intent, and the fact that "certain acts essential to the conspiracy's success are to be carried out by individuals who turn out to be

---

[1] As Defendant appears to concede, that the Indictment uses the word "kill" rather than "murder" is of no moment. *See* Def.'s Reply at 2. The Second Circuit has held that similar language "make[s] it sufficiently clear that the crimes charged were for conspiracy to commit *murder*," notwithstanding the absence of the terms "murder," "malice aforethought," or "premeditation." *United States v. Bout*, 731 F.3d 233, 240–41 (2d Cir. 2013) (emphasis in original) ("'[I]n an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy.'" (quoting *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002)).

3

government agents" is no defense. *United States v. Medina-Garcia*, 918 F.2d 4, 8 (1st Cir. 1990); *see also United States v. Miranda-Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991) ("Since the essence of any conspiracy is agreement, rather than the success of the venture, a defendant may be convicted of conspiracy even if the intended substantive crime could not occur because the person he and his coconspirators thought would participate in it was actually an agent of the government." (internal citation omitted)).[2] Whether the Government can sustain its burden in demonstrating the necessary intent is an issue for trial, but the Indictment is sufficiently plead.

### B.  Preemption of § 1114 by § 2339A

Defendant further argues that Count One must be dismissed because when Congress enacted § 2339A, it intended to "preempt i.e. be the exclusive means to prosecute the conduct at issue here," and thus, Defendant could be charged only under § 2339A, and not § 1114. *See* Def.'s Mem. at 5.  Defendant's contention is baseless.[3]

It is axiomatic that Congress may proscribe the same conduct in multiple statutes. *United States v. Kim*, 193 F.3d 567, 574 (2d Cir. 1999) ("'[W]hen an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.'" (quoting *United States v. Batchelder*, 442 U.S. 114, 123–124 (1979)). Although Defendant's alleged conduct may violate both §§ 2339A and 1114, those statutes otherwise target distinct criminal conduct. Section 2339A prohibits "provid[ing] material support or resources or conceal[ing] or disguis[ing] the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying

---

[2] Although "a person acting as an agent of the government cannot be a coconspirator, the presence of such an agent does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture, and defendants may be convicted of conspiracy even if, unbeknownst to them, the substantive crime would never have been committed because the person the coconspirators thought would commit it was actually an agent of the government." *United States v. Goldberg*, 756 F.2d 949, 958 (2d Cir. 1985) (internal citations omitted).

[3] The Indictment charges Defendant in Count Two with providing material support to a foreign terrorist organization in violation of 18 U.S.C. § 2339B, but does not charge him with a violation of § 2339A.

out, a violation of [certain, enumerated terrorism offenses]." 18 U.S.C. § 2339A(a).[4] Section 1114, by contrast, proscribes killing or attempting to kill United States officers or employees while they are "engaged in or on account of the performance of official duties," or any person assisting such an officer or employee. 18 U.S.C. § 1114.

Accordingly, while the statutes may overlap in some instances, they do not always apply to the same conduct. One may attempt to murder American officers without providing unlawful material support in violation of § 2339A, or violate § 2339A without attempting to commit murder. *See United States v. Holmes*, 44 F.3d 1150, 1154 (2d Cir. 1995) (comparing embezzlement and money laundering). Moreover, because the elements of the crimes differ, the statutes require different proof. The malice aforethought requirement in § 1114, for instance, is not an element that must be proved under § 2339A.

The legislative history of the statutes also provides no support for Defendant's argument. The statutes were enacted almost fifty years apart as part of distinct legislative agendas. *Compare United States v. Farhane*, 634 F.3d 127, 135 n.6 (2d Cir. 2011) (describing that § 2339A was enacted in 1994 "as part of the Violent Crime Control and Law Enforcement Act" and amended twice in 2001 and 2004) *with United States v. Bankoff*, 613 F.3d 358, 367 (3d Cir. 2010) (noting that § 1114 "originate[s] from a 1934 Act [t]o provide punishment for killing or assaulting [f]ederal officers" (citing Pub. L. No. 73–230, 48 Stat. 780 (1934)). Notably, § 1114 was last amended in 1996, after § 2339A was enacted. *See* 18 U.S.C. § 1114 (1996).

---

[4] "Material support and resources" are defined as "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials." 18 U.S.C. § 2339A(b)(1).

5

Indeed, Defendant offers no authority for the proposition that § 1114 is preempted, in any context, by § 2339A. *United States v. LaPorta*, 46 F.3d 152 (2d Cir. 1994)—on which he relies— is inapposite. *See* Def.'s Mem. at 5. There, in connection with setting fire to the car of an FBI informant to collect the insurance payout, the defendant was charged, pursuant to 18 U.S.C. § 844(h)(1), with using fire to commit a felony—namely, the felony of willful destruction of government property in violation of 18 U.S.C. § 1361. *LaPorta*, 46 F.3d at 153–54. A different subsection of § 844, however, expressly proscribed the use of fire to destroy government property. *Id.* at 155–56 (citing 18 U.S.C. § 844(f)). The Second Circuit thus concluded that § 844(h)(1) was preempted by § 844(f) because "under long-standing principles of statutory construction, a general section of a statute must give way to a specific one." *Id.* 156.

By contrast, §§ 1114 and 2339A are not part of the same statute. *See United States v. Maes*, 546 F.3d 1066, 1070 (9th Cir. 2008) (distinguishing *La Porta*, in which "[t]he proximity of the two statutory charges made the court skeptical that Congress could have intended the general charge to render the more specific one meaningless"). Nor is § 2339A more "specific" and § 1114 more general, as Defendant asserts. Indeed, § 2339A and its parallel provision § 2339B (charged here) prohibit a range of conduct that is significantly broader than the particular conduct with which Defendant is charged—namely, supplying weapons to terrorists. *See, e.g., Holder v. Humanitarian Law Project*, 561 U.S. 1, 36, 39 (2010) (holding that plaintiffs' proposal to "train members of [the designated terrorist group] how to use humanitarian and international law to peacefully resolve disputes" would violate § 2339B).

### C.     Extraterritoriality of 18 U.S.C. § 1114

Lastly, Defendant argues that § 1114 does not apply extraterritorially. *See* Def.'s Mem. at 12. Not so. Although Defendant is correct that § 1114 does not include an express provision for

6

extraterritorial application, and that there is a "legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application," *Small v. United States*, 544 U.S. 385, 388–89 (2005), such presumption does not apply "where the law at issue is aimed at protecting the right of the government to defend itself," *United States v. Vilar*, 729 F.3d 62, 73 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2684 (2014) (quotations omitted). "Statutes prohibiting crimes *against the United States government* may be applied extraterritorially even in the absence of 'clear evidence' that Congress so intended." *Vilar*, 729 F.3d at 73 (quoting *United States v. Gatlin*, 216 F.3d 207, 211 n.5 (2d Cir. 2000), *abrogated on other grounds*, *United States v. Yousef*, 750 F.3d 254 (2d Cir. 2014)) (emphasis in original).

It is well established in this Circuit that § 1114 falls into this exception and applies extraterritorially. *See United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011) ("Although the conspiracy to kill U.S. officers or employees count . . . contains no explicit extraterritoriality provision, the nature of the offense—protecting U.S. personnel from harm when acting in their official capacity—implies an intent that it apply outside of the United States." (internal citation omitted)); *United States v. Siddiqui*, 699 F.3d 690, 701 (2d Cir. 2012), *as amended* (Nov. 15, 2012) (rejecting argument that § 1114 did not apply extraterritorially in a "theater of war"); *United States v. Bout*, No. 08-CR-365 (SAS), 2011 WL 2693720, at *6 (S.D.N.Y. July 11, 2011), *aff'd*, 731 F.3d 233 (2d Cir. 2013).

Defendant's reliance on *Bowman* in arguing otherwise is misplaced; *Bowman* itself distinguishes between crimes against the United States—to which the presumption against extraterritoriality does not apply—and crimes against private individuals or their property—to which the presumption attaches. *See Vilar*, 729 F.3d at 73 (citing *Bowman*, 260 U.S. at 98). As § 1114 is "clearly aimed at the Government's right to defend itself, and unquestionably prohibits a

7

'crime against the United States Government,'" it may be applied extraterritorially. *United States v. Al Kassar*, 582 F. Supp. 2d 488, 497 (S.D.N.Y. 2008). Defendant's contention to the contrary thus fails.

## II. Discovery

Finally, Defendant seeks the production of all information regarding (1) his communications with the CIA, and (2) his prior cooperation with the FBI's Las Vegas Office. Dayan Aff. at 2–3. The Government represents that it is currently in compliance with its obligations under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), and rightly recognizes that its obligations include coordinating with relevant government agencies to ensure that any discoverable material is produced in a timely manner. Govn't Mem. at 8–9. Defendant has not presented any basis to conclude that the Government has not met such obligations. The request for discovery is thus denied without prejudice to renew if Defendant has a good faith basis for doing so.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Count One and for discovery is denied. The Clerk of the Court is respectfully directed to close item 28 on the docket.

The parties shall appear for a conference in this action on December 8, 2015 at 12:00 p.m. in Courtroom 110 of the U.S. District Court for the Southern District of New York, 40 Foley Square, New York, New York.

SO ORDERED.

Dated:   December 7, 2015
         New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge